UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ADAM MONDRAGON NIETO, *individually and on behalf of all other collective persons similarly situated,*

        Plaintiff,

 -against-

IZZO CONSTRUCTION CORP., JEAN ESPOSITO, and JOHN DOES 1-10,

        Defendants.
----------------------------------------------------------------------X

O R D E R

15 CV 6958 (RML)

LEVY, United States Magistrate Judge:

      Pursuant to the court's order of March 13, 2018, the parties to this wage and hour action submitted a proposed, but unexecuted, agreement settling plaintiff's Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims for a fairness review. (See Letter Motion for Settlement, dated May 4, 2018 ("Mot."), Dkt. No. 61; Proposed Agreement, dated May 4, 2018 ("Agrmt."), annexed as Ex. A. to Mot.) However, the court cannot reasonably review or approve any agreement that has not been executed by the parties.

      "[T]he FLSA is a uniquely protective statute." Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 207 (2d Cir. 2015). One of the fundamental goals of settlement review and approval is "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." Id. The Second Circuit, citing several examples of abusive FLSA settlement terms, concluded in Cheeks that "the need for such employee protections, even where the employees are represented by counsel, remains." Id.

      The filings made since the parties first reported a settlement suggest that plaintiff has not had an opportunity to review the proposed agreement in its entirety. On April 30, 2018, plaintiff's counsel requested a telephone conference and reported to the court that "this office has

repeatedly requested that the Defendants provide the Plaintiff with the Settlement Agreement on multiple occasions in writing and via telephone . . . . To date, this office still has not received the requested Settlement Agreement from the Defendants." (Letter Motion, dated Apr. 30, 2018, Dkt. No. 60.) I held the requested telephone conference the following day, during which defendants reported that they had resolved their concerns; in turn, I ordered counsel to submit the agreement for a fairness review by May 4, 2018. (Minute Entry, dated May 1, 2018.) Plaintiff's counsel timely complied with this order, but noted in its submission that "[s]ince we finalized the Settlement Agreement today on May 4, 2018, the Parties did not have a chance to have this Agreement executed. However, the parties intend to have the Settlement Agreement and Affidavit of Confession of Judgment [executed] shortly." (Mot. at 3.)

This series of events suggests that the agreement was drafted sometime between the telephone conference on May 1, 2018 and its submission on May 4, 2018. While it is possible that plaintiff is aware of the general terms of the settlement, there is no evidence on the face of the agreement to suggest that the terms were reviewed in any detail with him.[1] Absent an agreement executed by both parties, the court cannot determine "whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citations and internal quotation marks omitted).

---

[1] The proposed agreement does contain a section explaining that plaintiff represents he has "carefully read all of the provisions of this Agreement; has had the opportunity to have his attorneys answer any questions he might have had; fully understands all of the provisions of this agreement; has had a reasonable period of time to consider whether to enter into this Agreement; and is voluntarily and knowingly entering into this Agreement." (See Agrmt § 7.) However, as plaintiff has not actually signed and executed this agreement, the court cannot give this lawyer-drafted clause any weight at this time.

Furthermore, the agreement as submitted "compiles a 'greatest hits' of various provisions that have been struck down or questioned by various courts in this Circuit," including several that Cheeks itself recognized to be impermissible.  Olano v. Designs by RJR, No. 17 CV 5703, 2017 WL 4460771, at *3 (S.D.N.Y. Oct. 6, 2017) (collecting impermissible terms and related cases).  These include: (1) an overbroad general release that stretches well beyond the wage and hour claims in this case (Agrmt. § 4); (2) a no-reemployment/no-rehire clause (id. § 3); (3) a non-assistance clause that appears designed to frustrate the remedial purpose of the FLSA (id. § 4(g)); (4) a requirement that plaintiff waive relief that may in the future become available to him through any other legal or administrative proceeding (id. § 4(f)); and (5) an overly broad non-disparagement clause that would prevent plaintiff from speaking openly and honestly with others about his experiences litigating this case (id. § 5).  However, other than their one-sentence statement that the general release "does not render the Agreement unfair" (Mot. at 3), the parties offer not a shred of explanation—and cite no cases—to justify inclusion of these provisions.

More disturbing, however, is that the parties have also inserted a "spoiler clause" in the "Severability" section that seeks to nullify the effect of judicial review of the general release terms of the agreement.  The spoiler clause reads as follows:

> If the release of claims contained in this Agreement is limited or held to be null and void, then: (1) this Agreement shall be interpreted or modified to bar any claim that Plaintiff may assert, or, if not so interpreted and/or modified, (2) Plaintiff shall execute an enforceable general and unlimited release of all claims. However, if either 12(a) or 12(b) cannot be done, as a matter of law, then Plaintiff shall return, upon demand by ICC, the Settlement Payment, or, if its return is not permitted by law or not demanded by ICC, such amount shall be a set-off against any recovery.

(Agrmt. § 11(b).)  This provision is disturbing on several levels, most notably for its implicit challenge to the court's authority to review and (when appropriate) modify FLSA settlements.

3

"[T]he clear mandate of Cheeks is to have courts scrutinize settlement agreements that forever dispose of a worker's claims, because the FLSA demands their protection from certain invidious conduct."  Guarnero-Ruiz v. 36-03 Food, LLC, No. 17 CV 3178, 2017 WL 7049543, at *10 (E.D.N.Y. Dec. 11, 2017).  This court takes that mandate, rooted in the FLSA's remedial and uniquely protective purpose, extremely seriously.  Allowing parties to include such spoiler provisions in FLSA settlement agreements would permit further end-runs around Cheeks that this court cannot—and will not—countenance.

For the foregoing reasons, the motion for settlement approval is DENIED, without prejudice.  Within twenty-one (21) days of this order, the parties are ordered to either:

(1) file a signed, executed agreement that (a) does not include the five impermissible provisions identified above;[2] (b) strikes the spoiler clause entirely; and (c) affirms that plaintiff has fully reviewed and understood all of its provisions, including (if applicable) being able to review the agreement in his native language; or

(2) inform the court of their intent to resume litigation, beginning with resolution of the still-pending motion for collective certification.

SO ORDERED.

Dated: Brooklyn, New York
       May 14, 2018

/s/
ROBERT M. LEVY
United States Magistrate Judge

---

[2] If the parties wish to retain or modify any of these provisions, they must also file additional briefing to accompany their renewed motion for settlement approval, which will be due on the same day as the executed settlement agreement.

4